UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC,<br><br>Plaintiff,<br><br>v.<br><br>CURTI RANCH TWO MAINTENANCE ASSOCIATION, INC.; SFR INVESTMENTS POOL 1, LLC,<br><br>Defendants. | Case No. 3:17-cv-00699-LRH-CBC<br><br>ORDER |

Before the court are several pending dispositive motions.

First, defendant, SFR Investments Pool 1, LLC ("SFR") moved this court to dismiss the complaint. ECF No. 31. Plaintiff, Nationstar Mortgage, LLC ("Nationstar") opposed, and SFR replied. ECF Nos. 34, 35.

Second, Nationstar filed a partial motion for summary judgment. ECF No. 37. Accordingly, SFR responded (ECF No. 38) and Nationstar replied (ECF No. 40).

Third, defendant SFR filed a counter motion for relief pursuant to Rule 56(d) (ECF No. 39); to which Nationstar responded (ECF No. 41) and SFR replied (ECF No. 42).

Fourth, Nationstar filed a motion for summary judgment (ECF No. 45); accordingly, the parties filed their responses and reply (ECF Nos. 52, 53, 54).

Fifth, defendant SFR filed a motion for summary judgment. ECF No. 46. Nationstar responded, (ECF No. 51), and SFR replied (ECF No. 57).

The court now denies all motions.

## I. BACKGROUND

This matter arises from a nonjudicial foreclosure sale on real property located at 480 Cicada Court, Reno, Nevada 89521 ("the property"). ECF No. 1 ¶ 6. In 2005, Guillermo and Sandra Carey (nonparties) purchased the property and obtained a loan from Countrywide Home Loans, Inc. in the amount of $344,685.00 secured by a deed of trust recorded on July 6, 2005. *Id.* ¶ 12; ECF No. 37-1. Plaintiff alleges this deed of trust was assigned first to BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing LP (ECF No. 37-2), then to Nationstar (ECF No. 37-4).[1] ECF No. 1 ¶ 13-15.

Curti Ranch Two Maintenance Association, Inc. ("Curti Ranch") (a homeowners' association), through its agent Alessi & Koenig, LLC ("Alessi") recorded a Notice of Delinquent Assessment (Lien) against the property on November 30, 2010. ECF No. 1 ¶16; ECF No. 37-5. On February 24, 2011, Curti Ranch recorded a Notice of Default and Election to Sell Under Homeowners Association Lien to satisfy the delinquent amount. ECF No. 1 ¶17; ECF No. 37-6. A Notice of Trustee's Sale was recorded on March 13, 2013.[2] ECF No. 37-7.

On June 17, 2011, plaintiff alleges Bank of America, N.A. tendered a $1,008.00 payment to Curti Ranch in an attempt to satisfy the superpriority amount, but Curti Ranch refused to accept tender. ECF No. 1 ¶ 28. A non-judicial foreclosure sale occurred on September 19, 2013, through which SFR purchased the property for $22,000.00. *Id.* ¶¶ 18, 30; ECF No. 37-8. On September 27, 2013, a Trustee's Deed Upon Sale was recorded. ECF No. 1 ¶ 29; ECF No. 37-8.

///

---

[1] Nationstar requests the court take judicial notice of these assignments. SFR does not object to the court taking judicial notice that a document was publicly recorded, but objects to the court taking judicial notice of the truth or falsity of the facts contained in the document because defendant SFR disputes the existence of a loan secured by a deed of trust as to the property, and disputes that Nationstar is the beneficiary of the Deed of Trust. *See* ECF Nos. 37; 38.

[2] The court takes judicial notice of these publicly recorded foreclosure documents. Defendants have not disputed the validity of these documents, these are matters of public record recorded in the Washoe County Recorder's Office, and are appropriate for judicial notice under Federal Rules of Evidence 201(b)(2). Accordingly, it is proper for the court to consider these documents when reviewing these motions for summary judgment. *See Harlow v. MTC Fin. Inc.*, 865 F. Supp. 2d 1095, 1098 (D. Nev. 2012) ("When ruling on a motion for summary judgment, the Court may take judicial notice of matters of public record, including public documents.").

Approximately four years later, Nationstar—who alleges it is the beneficiary of the first deed of trust on the property—brought suit challenging the constitutionality and the circumstances of the foreclosure sale. ECF No. 1. The court dismissed two of plaintiff's claims—violations of NRS § 116.1113 and wrongful foreclosure—as the claims were outside the statute of limitations.[3] The court's order as to the five pending dispositive motions regarding plaintiff's remaining two causes of action—quiet title / declaratory judgment against both SFR and Curti Ranch and injunctive relief against SFR—now follows.

## II. LEGAL STANDARD

### A. Failure to State a Claim Pursuant to Civil Procedure Rule 12(b)(6)

A party may seek the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a legally cognizable cause of action. *See* Fed. R. Civ. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule 8(a)(2). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the

---

[3] In the Court's prior order, ECF No. 30, it dismissed Nationstar's claims for wrongful foreclosure and breach of NRS § 116.1113. Nationstar does not motion this court to reconsider these issues, and the court will not do so *sua sponte*. Therefore, any motion by Nationstar pertaining to those claims is denied as moot.

3

defendant is liable for the alleged misconduct. *See id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citations omitted)). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion— even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (internal quotation marks omitted).

**B. Motion for Summary Judgment Pursuant to Civil Procedure Rule 56(a).**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*,

799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

### III. DISCUSSION

#### A. The Statute of Limitations for a Quiet Title Action is Five Years.

In Nevada, an action to quiet title arising from an homeowners' association ("HOA") foreclosure sale is subject to a five-year statute of limitations period pursuant to Nevada Revised Statute § 11.070. *See U.S. Bank Nat'l Ass'n v. Southern Highlands Cmty. Ass'n*, No. 2:18-cv-00205-GMN-GWF, 2018 WL 3997265, at *2 (D. Nev. Aug. 21, 2018); *Deutsche Bank Nat'l Trust Co. v. SFR Invest. Pool 1*, Case No. 2:17-cv-02638-GMN-GWF, 2018 WL 3758569, at *2 (D. Nev. Aug. 8, 2018); *Bank of Am., N.A. v. Desert Canyon Homeowners Ass'n*, Case No. 2:17-cv-00663-MMD-NJK, 2017 WL 4932912, at *2 (D. Nev. Oct. 31, 2017); *Bank of Am., N.A. v. Nev. Trails II Cmty. Ass'n*, Case No. 2:16-cv-00880-JCM-PAL, 2017 WL 2960521, at *4 (D. Nev. July 11, 2017); *Nationstar Mortg., LLC v. Falls at Hidden Canyon Homeowners Ass'n*, Case No. 2:15-cv-01287-RCJ-NJK, 2017 WL 2587926, at *3 (D. Nev. June 14, 2017); *Bank of*

1  *Am., N.A. v. Antelope Homeowners' Ass'n.*, Case No. 2:16-cv-00449-JCM-PAL, 2017 WL 421652, at *3 (D. Nev. Jan. 30, 2017).[4]

Here, Nationstar's quiet title claim arises from an HOA foreclosure sale; therefore, a five-year statute of limitations period applies. "Where a claim arises from the non-judicial foreclosure on real property, the statute of limitations begins to accrue at the time of the foreclosure sale." *US Bank N.A. v. BDJ Invs., LLC*, Case No. 2:16-cv-00866-GMN-PAL, 2018 WL 4705525, at *2 (D. Nev. Sept. 29, 2018). The foreclosure sale took place on September 19, 2013. Because the plaintiff filed its Complaint on November 30, 2017, it's quiet title claim is timely and is not barred by the statute of limitations.

### B. The Nevada Supreme Court held the notice provision of Nevada Revised Statute § 116 is Constitutional.

Plaintiff argues that Curti Ranch's foreclosure sale could not have extinguished its deed of trust because the Ninth Circuit ruled in *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.* that the statute's "opt-in" notice provision was facially unconstitutional. 832 F.3d 1154, 1158-59 (9th Cir. 2016). Plaintiff is correct that the Ninth Circuit held that NRS § 116.3116's "opt-in" notice scheme was unconstitutional because it violated lender's due process rights. *Id.* at 1156. In coming to this holding, the Court determined that NRS § 107.090 should not be read into NRS § 116.31168(1) to cure the due process deficiency. *Id.* at 1159.

However, "a State's highest court is the final juridical arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Cal. Teachers Ass'n v. State Bd. Of Educ.*, 271 F.3d 1141, 1146 (9th Cir. 2001) ("it is solely within the province of the state courts to authoritatively construe state legislation."). Further, the Ninth Circuit has held that it is "required to follow intervening decisions of the [State] Supreme Court that interpret state law in a way that contradicts [its] earlier interpretation of that law." *Bonilla v. Adams*, 423 Fed. Appx. 738, 740 (9th Cir. 2011); *see also Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)

---

[4] The court declines to follow *Ocwen Loan Servicing, LLC, v. SFR Investments Pool 1, LLC*, Case No. 2:17-cv-01757-JAD-VCF, 2018 WL 2292807, at *2-5 (D. Nev. May 18, 2018); and *Bank of America, N.A., v. Country Garden Owners Ass'n*, Case No. 2:17-cv-01850-APG-CWH, at *1-2 (D. Nev. March 14, 2018).

("our interpretation . . . was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect."). A prior decision that has been "undercut by higher authority to such an extent that it has been effectively overruled by such higher authority," is no longer binding on the court. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003).

The Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon* so undercut *Bourne Valley* that the two are irreconcilable. *See Christiana Trust v. SFR Invs. Pool 1, LLC*, 2:16-cv-00684-GMN-CWH, 2018 WL 6603643, at *3 (D. Nev. Dec. 17, 2018); *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, Case No. 2:15-cv-00692-GMN-CWH, 2018 WL 4704031, at *3-4 (D. Nev. Sept. 29, 2018); *Deutsche Bank Nat'l Trust Co. v. Isla at S. Shores Homeowners Ass'n*, 2:16-cv-02275-GMN-GWF, 2018 WL 4682323, at *4-5 (D. Nev. Sept. 28, 2018); *U.S. Bank Nat'l Ass'n v. Heritage Estates Homeowners Ass'n*, 2:16-cv-01385-GMN-CWH, 2018 WL 4623151, at *5-6 (D. Nev. Sept. 26, 2018). In its decision, the Nevada Supreme Court specifically declined to follow the Ninth Circuit, instead holding that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090," and that prior to the October 1, 2015 amendment, an HOA was required to "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018). This holding so undercuts *Bourne Valley* that it is no longer controlling authority with respect to section 116.3116's notice provisions in this district. Therefore, the court rejects plaintiff's theory that *Bourne Valley* prevents Curti Ranch's foreclosure sale from extinguishing Nationstar's deed of trust.[5]

**C. Nationstar's as-applied-due-process challenge to foreclosure notice fails.**

Nationstar also argues that the sale violated its due process rights as applied in this case because none of the HOA's notices provided that the deed of trust was at risk or specified the superpriority portion of the lien. To satisfy due process, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action

---

[5] The court declines to discuss the party's arguments for returning to the 1991 statute under the Return Doctrine or saving the statute pursuant to severability as those arguments are moot given the Nevada Supreme Court's ruling.

7

and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To establish its procedural due process claim, Nationstar must show "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. Of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Nationstar argues that all of the notices were directed to the homeowners, and stated only that if the foreclosure proceeded, they would lose the home, not that the Bank would lose its priority. Additionally, Nationstar argues that Alessi, along with other agents in the business, did not take the position that it had a superpriority, but that its letters to the bank indicated that the nine-month superpriority would not be triggered until the beneficiary under the first deed of trust foreclosed.

Nationstar's arguments are unavailing. "The fact that a notice does not identify a super-priority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Nationstar Mortg. LLC. V. Amber Hills II Homeowners Ass'n*, Case No. 2:15-cv-014330APG-CWH, 2016 WL 1298108, at *7 (D. Nev. Mar. 31, 2016). Additionally, because notices go "to the homeowner and other junior lienholders, not just [to the holder of the first deed of trust], . . . it [is] appropriate to state the total amount of the lien." *SFR Invs. Pool 1, LLC v. U.S. Bank N.A.*, 334 P.3d 408, 418 (Nev. 2014) (*en banc*).

Nationstar concedes that its predecessor in assignment, Bank of America, received notice of default: "This letter is in response to your Notice of Default with regard to the HOA assessments purportedly owed on the above described real property." ECF No. 45-7. This letter further acknowledges that under Chapter 116, "a portion of your HOA lien is arguably senior to BAC's first deed of trust," and offers to pay the full amount to discharge the superpriority lien held by the HOA. *Id.* Given this clear acknowledgment, Nationstar cannot now claim it did not have adequate notice of the foreclosure to protect its due process rights. Therefore, the court finds that the notice was adequate to apprise the interested parties of the foreclosure sale.

///

**D. Tender was made in full and was not impermissibly conditional.**

Nationstar argues that because Bank of America tendered the superpriority amount, that extinguished the HOA's superpriority lien and SFR took title to the property subject to the first deed of trust. "A valid tender of payment operates to discharge a lien or cure a default." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d. 113, 117 (Nev. 2018) ("*Bank of America*"). Further, if a junior lien holder pays off the priority lien, that will prevent a foreclosure from extinguishing that lien holder's deed of trust. *See 7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, 979 F.Supp.2d 1142, 1149 (D. Nev. 2013); NRS § 116.31166(1).

"Valid tender requires payment in full." *Bank of America*, 427 P.3d at 117. Under Chapter 116, the super-priority portion of an HOA lien consists of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges; all other HOA assessments are sub-priority. *Id.*; *7912 Limbwood Court. Trust*, 979 F. Supp. 2d at 1150. The Nevada Supreme Court recently addressed this issue. In *Bank of America*, the Court found that "[p]ursuant to the HOA's accounting, nine months' worth of assessment fees totaled $720, and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement." 427 P.3d at 118. *Contra Bank of Am., N.A. v. Nevada Trails II Community Ass'n*, Case No. 2:16-cv-00880-JCM-PAL, 2017 WL 2960521, at *7 (D. Nev. July 11, 2017) ("BANA fails to explain why it was appropriate to eliminate the other charges calculated in the ledger's superpriority total."). Therefore, the Court found that the tendered amount of nine months' worth of delinquent fees tendered was the full superpriority amount.

Curti Ranch argues that NRS § 116.3102(1)(j)-(n) provide for abatement charges that are part of the superpriority portion of the lien. ECF No. 53. However, Curti Ranch provides no support for this assertion and at least one court in this district has found that these charges do not appear to be abatement charges. *See Elizon Master Participation Trust 1 v. Saticoy Bay LLC Series 8920 El Diablo*, Case No. 2:16-cv00751-JCM-PAL, 2017 WL 4185468, at *4 (D. Nev. Sept. 21, 2017).

SFR further argues that tender has not been definitively established. "A tender of payment is an offer to perform, coupled with the present ability of immediate performance,

9

which, were it not for the refusal of cooperation by the party to whom tender is made, would immediately satisfy the condition or obligation for which the tender is made." *Graff v. Burnett*, 414 N.W.2d 271, 276 (Neb. 1987); *see also Southfork Invs. Group, Inc. v. Williams*, 706 So.2d 75, 79 (Fl. Dist. Ct. App. 1998) ("To make an effective tender, the debtor must actually attempt to pay the sums due; mere offers to pay, or declarations that the debtor is willing to pay, are not enough."); *Bembridge v. Miller*, 385 P.2d 172, 175 (Or. 1963) ("'tender' has definite legal significance imparting not merely the willingness and intent to perform but also the ability at the time of tender to pay in accordance with the offer.").[6] Curti Ranch, in its response briefing, indicates that it rejected tender in good faith, and never argues that it did not receive the tender. ECF No. 53 at 3, 9-10. Rather Curti Ranch argues its rejection was proper because Bank of America's tender was impermissibly conditional. *Id.*

Here, Curti Ranch's demand letter and ledger provided that upon payment of $2,407.00 Curti Ranch would release its lien on the property. ECF No. 45-7. The ledger and letter did not differentiate between the super and subpriority portion of the total lien. The ledger indicated that dues were $112 per month and does not provide any entries for maintenance or nuisance-abatement charges. The charges included are Attorney and/or Trustees fees; Notary, Recording, Copies, Mailings, and PACER; RPIR-GI Report; Title Research, Management Company Audit Fee; and Late Fees. ECF No. 45-7. While Bank of America did not pay the full amount listed, it sent a cashier's check for $1,008.00,[7] the amount it calculated to be nine months' worth of delinquent payments due to Curti Ranch, with a letter explaining the statutory basis for the payment amount. *Id.* Bank of America did not simply make an offer to pay, but in providing the cashier's check, it showed its ability to pay immediately the sum owed. Based on the record, the court finds that tender of the nine months' worth of delinquent fees was payment in full.

---

[6] While this precedent is not binding on this court, the Nevada Supreme Court relies on it in coming to its own conclusions regarding tender. *See Nationstar Mortg., LLC v. Saticoy Bay LLC*, 429 P.3d 292, 2018 WL 5095831, at *1 (Nev. 2018) (unpublished).

[7] Bank of America calculated $1,008 was due, which was equal to $112 per month multiplied by 9 months. Neither SFR nor Curti Ranch have argued this was not the correct amount due for 9 months of delinquent payments owed.

10

"In addition to payment in full, valid tender must be unconditional, or with conditions on which the tendering party has a right to insist. 'The only legal conditions which may be attached to a valid tender are either a receipt for full payment or a surrender of the obligation.'" *Bank of America*, 427 P.3d. at 118 (quoting *Heath v. L.E. Schwartz & Sons, Inc.*, 416 S.E.2d 113, 114-15 (Ga. Ct. App. 1992)) (internal citations omitted). SFR and Curti Ranch argue that even if the tender was paid in full, it was improper because, based on the letter sent with the payment, it was conditional.

The letter states, in pertinent part:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BAC's financial obligations towards the HOA in regards to the real property located at 480 Cicada Court have now been "paid in full."

ECF No. 45-7. As discussed above, the amount Bank of America tendered was sufficient to satisfy the superpriority lien amount and thus, the issue was not undecided. Following the Nevada Supreme Court, the Bank of America had a right to include this condition and it did not make the tender impermissible. *See Bank of America*, 427 P.3d. at 118; *Isla at S. Shores*, 2018 WL 4682323, at *5.

Finally, SFR and Curti Ranch argue that even if tender was proper, Curti Ranch's rejection was in good faith. Here, Bank of America sent a letter to Curti Ranch offering to pay the superpriority portion of the loan and inquiring as to the amount owed. Based on Curti Ranch's response, Bank of America sent a cashier's check in the amount of 9-months overdue payments owed. The record indicates that Curti Ranch did not accept this tender and provided no explanation for the rejection. Instead, Curti Ranch proceeded with the foreclosure sale.

The court is unpersuaded that Curti Ranch's rejection of tender was justifiable. *See BAC Homes Loans Servicing, LP v. Aspinwall Court Trust*, 422 P.3d 709, 2018 WL 3544962, at *1 (Nev. 2018) (unpublished). As discussed above, Bank of America had tendered the full amount without impermissible conditions. Further, this tender provided Bank of America's legal reasoning for why it was tendering the lesser amount. Because tender was made in full and was

not impermissibly conditional or otherwise invalid, the court finds Curti Ranch's rejection was not justifiable.

### E. SFR takes title of the property subject to the first deed of trust.

"A foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no longer in default." *Bank of America*, 427 P.3d at 120. Because valid tender will satisfy the superpriority portion of an HOA lien, any subsequent foreclosure sale will be void as to the superpriority portion and will not extinguish the first deed of trust. *Id.* Further, "[a] party's status as a BFP is irrelevant when a defect in the foreclosure proceedings renders the sale void." *Id.*; *see also Saticoy Bay LLC Series 8920 El Diablo*, 2018 WL 1770127, at * 6 ("the bona fide purchase analysis is irrelevant [i]f [plaintiff] establishes no superpriority lien existed on the home at the time of foreclosure . . .." (internal quotations omitted)).

Here, Bank of America's valid tender satisfied the superpriority portion of Curti Ranch's lien. Therefore, when Curti Ranch foreclosed on its entire lien, the sale was void as to the superpriority portion and Curti Ranch could not convey full title to SFR during the foreclosure. Further, because Curti Ranch's superpriority lien was already discharged before it foreclosed on the property, SFR's status as a *bona fide* purchaser is irrelevant. Accordingly, the first deed of trust was not extinguished by the foreclosure, and the court finds that SFR purchased the property subject to the first deed of trust.

### F. Nationstar has not proved its interest in the property and therefore, the court denies its motion for summary judgment.

SFR argues that Nationstar has failed to prove it has standing to enforce the mortgage or that it has proper title through the chain of ownership of the note and deed of trust. SFR further argues that Nationstar was required to produce the original or certified copy of the deed of trust, mortgage note, and each assignment, and that any assignment must be proved proper under Article 3 of the Uniform Commercial Code, section 3-203(a). In opposition, Nationstar argues that because the purpose of this litigation is not to enforce the note against SFR, it was not required to produce the "wet ink" deed of trust. Rather, Nationstar argues that it must only provide a complete chain of assignments linking it to the record holder of the mortgage, or a

single assignment from the record holder of the mortgage in order to prove standing, which Nationstar argues it has done through the publicly recorded documents it provided as exhibits. Nationstar therefore argues that there is no genuine issue of material fact in dispute and that this court should grant summary judgment in its favor.

First, SFR "does not have standing to challenge [the assignment's] validity because [SFR] is neither a party to nor a third-party beneficiary of the contract between the assignors and assignees—only the parties to those transactions would have standing to challenge their validity." *Villagrana v. Recontrust Co., N.A.*, No. 3:11-cv-00652-ECR-WGC, 2012 WL 1890236, at *6 (D. Nev. May 22, 2012). Therefore, any challenge by SFR that the assignment must be proved valid is unavailing.

Second, a quiet title action "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." NRS § 40.010. "In a quiet title action, each party must plead and prove his or her own claim to the property in question," and a "plaintiff's right to relief therefore depends on superiority of title." *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992). "A plaintiff may prove superiority of title by demonstrating that a foreclosure sale was invalid for failure to follow foreclosure procedures pursuant to Nevada law." *Bank of America, N.A. v. Woodcrest Homeowners Ass'n*, Case No. 2:15-cv-01024-GMN-GWF, 2016 WL 8732298, at *4 (D. Nev. March 25, 2016); *see also Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 245, 255 (Nev. 2012) ("[A] sale may be voided if carried out without substantially complying with the statutory requirements."). As discussed above, Curti Ranch's foreclosure sale was invalid; Curti Ranch, therefore, could not pass title to the property upon the foreclosure sale and the first deed of trust remains in place.

However, "[t]o have standing to assert a quiet title claim, a plaintiff must have a current claim to the land in dispute." *1597 Ashfield Valley Trust v. Federal National Mortg. Ass'n Sys.*, Case No. 2:14-cv-02123-JCM-CWH, 2015 WL 4581220, at * 9 (D. Nev. July 28, 2015); *see also Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) ("A plea to quiet title does not require particular elements, but each party must plead and prove his or her own

claim to the property in question." (internal quotations omitted)). While the beneficiary and assignee of a Deed of Trust has standing to assert the rights held by its predecessor in interest, "the burden of proof rests with the plaintiff to prove a good title in himself." *Velazquez v. Mortg. Electronic Registration Sys., Inc.*, Case No. 2:11-cv-00576-JCM-RJJ, 2011 WL 1599595, at *2 (D. Nev. April 27, 2011); *Interim Capital LLC v. Herr Law Group, Ltd.*, Case No. 2:09-cv-01606-KJD-LRL, 2011 WL 7047062, at *6 (D. Nev. Oct. 21, 2011) ("The general rule of assignments is that the transferee has the same rights as the transferor."). "[A] complete chain of assignments linking [the moving party] to the record holder of the mortgage, or a single assignment from the record holder of the mortgage," will meet this burden. *See U.S. Bank Nat. Ass'n v. Ibanez*, 941 N.E.2d 40, 53 (Mass. 2011) ("[T]here must be proof that the assignment was made by a party that itself held the mortgage.").

Nationstar provided the following exhibits to show a complete chain of title and prove its current interest in the property: (1) Deed of Trust, recorded by lender Countrywide Home Loans, Inc., in the Washoe County Recorder on July 6, 2005. This deed of trust identifies MERS as the beneficiary under the security instrument. ECF Nos. 37-1; 45-1; (2) Corporation Assignment of Deed of Trust Nevada, recorded on May 2, 2011, in the Washoe County Recorder, in which MERS assigns and transfers the deed of trust to BAC Home Loans Servicing, LP, FKA, Country Wide Home Loans Servicing LP. ECF No. 37-2; 45-3; (3) Assignment of Deed of Trust, recorded on November 4, 2013, in the Washoe County Recorder, in which Bank of America—who Nationstar alleges is the successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP—conveyed all its beneficial interest under the deed of trust to Nationstar Mortgage, LLC. ECF No. 37-4; 45-11. This assignment was corrected and recorded in the Washoe County Recorder on July 23, 2018 to clarify this assignment. ECF No. 45-12.

While this appears to present a complete chain of title ending with Nationstar, the court is concerned by two documents that were presented as evidence: (1) Assignment of Deed of Trust, recorded on December 26, 2012, in the Washoe County Recorder, in which MERS appears to

have assigned and transferred its rights to title and interest in the deed of trust to U.S. Bank,[8] (ECF 37-3); and (2) SFR produced a Discharge of Assignment, recorded in the Clark County Recorder's Office on April 13, 2014, that appears to discharge the assignment to U.S. Bank (ECF 52-1(5)). However, this discharge does not reference the prior assignment date of December 26, 2012, and it was filed with the Clark County Recorder rather than the Washoe County Recorder.

While the recorded chain of title indicates that on their face Nationstar owns the first deed of trust, these documents raise a genuine issue as to whether Nationstar currently owns the first deed of trust to the property at issue. Therefore, the court cannot quiet title in Nationstar's favor and accordingly, denies its motion for summary judgement.

**G. SFR's counter motion for relief under 56(d) is denied.**

SFR motioned this court under 56(d) for the following relief: (1) should the court find Nationstar's quiet title claim was timely filed, it should allow for additional time for discovery; (2) this court should stay this case pending the Nevada Supreme Court's decision on the certified questions; (3) if the court does not agree to a stay, that the court allow for additional time for discovery, which SFR believes will lead to the discovery of a genuine issue of material fact.

First, as the court discussed above, the statute of limitations for a quiet title claim in this type of case is five years. Therefore, Nationstar's claim is timely filed and SFR's motion to dismiss is denied. Second, the court is rendering this decision after the Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon*, and therefore, any argument for a stay is moot.

Finally, as discussed above, the record is not complete as to whether Nationstar is the current beneficiary of the first deed of trust, and this case should proceed accordingly. Therefore, SFR's counter motion for relief under Rule 56(d) is denied as moot.

///

///

---

[8] The complete name provided in this assignment is U.S. Bank National Association for the Benefit of the Certificate Holders CSFB Mortgage Securities Corp. Adjustable Rate Mortgage Trust 2005-11 Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-11.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that defendant SFR's motion to dismiss (ECF No. 31) is **DENIED**.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (ECF No. 37) is **DENIED**.

IT IS FURTHER ORDERED that defendant SFR's counter motion for relief pursuant to Rule 56(d) (ECF No. 39) is **DENIED**.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (ECF No. 45) is **DENIED**.

IT IS FURTHER ORDERED that defendant SFR's motion for summary judgment (ECF No. 46) is **DENIED**.

IT IS SO ORDERED.

DATED this 30th day of January, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE